IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES AVIATION UNDERWRITERS, INC., | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) |
| v. | ) 1:11CV141 ) |
| BILL DAVIS RACING, INC., | ) ) |
| Defendant/Counter-Claimant, | ) ) |
| RENAISSANCE AIR, LLC, and BANCORPSOUTH BANK, | ) ) ) |
| Defendants. | ) ) |

RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a Motion for Judgment on the Pleadings [Doc. #19] filed by Plaintiff United States Aviation Underwriters, Inc. ("U.S. Aviation" or "Plaintiff"). In that Motion, Plaintiff seeks declaratory judgment in its favor in this insurance coverage dispute. Plaintiff also seeks dismissal of counterclaims asserted by Defendant Bill Davis Racing, Inc. ("BDR") for unfair and deceptive trade practices and bad faith refusal to settle. At the request of the parties, the Court held a hearing on the pending motions. Based on the information presented in the parties' filings and at the hearing, and as set out in greater detail below, this Court concludes that there are factual issues in this case that cannot be resolved based solely on the pleadings, and therefore this Court recommends that Plaintiff's Motion for Judgment on the Pleadings be denied to the extent Plaintiff seeks judgment in its favor based on the pleadings

alone, without prejudice to Plaintiff raising those issues on a Motion for Summary Judgment after an opportunity for discovery. However, to the extent Plaintiff seeks dismissal of Defendant BDR's counterclaims for unfair and deceptive trade practices and bad faith refusal to settle, the Court will recommend that Plaintiff's Motion be granted and that those claims be dismissed.

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

In this suit, Plaintiff U.S. Aviation seeks a declaratory judgment with respect to its duties and obligations under an aircraft insurance policy issued by Plaintiff to Defendant BDR. Defendant BDR is the owner of an Embraer turboprop aircraft bearing FAA identification number N22BD ("the aircraft"). Defendant BancorpSouth Bank ("Bancorp") is the lienholder on the aircraft. Plaintiff U.S. Aviation issued an All-Clear Aircraft Policy to BDR for the aircraft ("the Policy"), effective from December 22, 2009 to December 22, 2010. The Policy at issue insures BDR for "occurrences" that take place during the Policy period. "Occurrences" are defined as "any accident or continuous or repeated exposure to conditions which you don't expect to happen resulting in bodily injury, property damage or loss of or damage to your aircraft." (Compl., Ex. 3, I.B.) Section III.Q of the Policy sets out the aircraft damage that is <u>not</u> covered under the Policy. Embezzlement is one act that is not covered: "We won't cover loss or damage to your aircraft or its parts caused when someone with a legal right to possess your aircraft embezzles it." (Compl. Ex. 3, III.Q.4.) The Policy also provided coverage to Bancorp as the lienholder pursuant to an Endorsement identified as the "Lienholder's or Lessor's Interest Coverage" (Endorsement 12).

Based on a series of developments in late 2010, the aircraft was ultimately flown to Honduras and partially disassembled, which BDR contends occurred without its knowledge or permission. BDR submitted a proof of claim under the Policy, contending that the loss of the aircraft was the result of "theft." However, Plaintiff contends that the loss of the aircraft was the result of an "embezzlement" and therefore is not covered under the Policy. With respect to these contentions, Plaintiff alleges that on October 21, 2010, BDR signed a Lease Agreement with Renaissance Air, LLC ("Renaissance Air"), pursuant to which Renaissance Air agreed to lease the aircraft from BDR for 10 months for a monthly rental fee of $75,000.00 and an hourly fee of $298.00 for maintenance reserves. (Compl. at 3.) Under the Lease Agreement, the aircraft was to be based at the Opa-locka Airport in Miami, Florida. (Compl. at 3.) This Lease Agreement also included an aircraft purchase agreement under which Renaissance Air could purchase the aircraft for $1,100,000.00. (Id.) The Renaissance Air Lease Agreement required Renaissance Air to maintain insurance on the aircraft, and such insurance was to be "primary" and not "subject to any offset." (Compl. at 3-4.) However, the parties agree that this lease and sales transaction ultimately fell through. (Pl.'s Mem. at 4; BDR's Answer ¶ 15; Renaissance Air's Answer ¶ 10.) On or about October 29, 2010, Renaissance Air in turn signed a lease purchase agreement with Rollins Air, a business located in Honduras. In this Renaissance-Rollins Agreement, Rollins Air agreed to pay $100,000.00 in monthly rent for the aircraft and an hourly fee of $298.00 for maintenance reserves. (Compl. at 4.) This lease contained a purchase option for the aircraft in the amount of $1,400,000.00. (Id.)

On November 16, 2010, Mr. Bill Davis of Defendant BDR signed an "Authorization to Move Embraer 120ER N22BD," which states that the president of Renaissance Air was authorized to "have the [aircraft] flown to Opa Locka Airport in Miami, Florida for maintenance." (Compl. at 4; BDR's Answer ¶ 19.) However, the aircraft was not flown to the Opa Locka Airport. Instead, on November 28, 2010, the aircraft arrived at Kendall-Tamiami Executive Airport in Miami, Florida, for either a "pre-buy inspection" or for repairs that were to be made by BDR and were required by the Renaissance Air-BDR Lease Agreement. (Compl. ¶ 20; BDR's Answer ¶ 20; Renaissance Air's Answer ¶ 15.) Subsequently, on December 4, 2010, the aircraft was flown to Goloson International Airport in La Ceiba, Honduras, and was delivered to Rollins Air. (Compl. at 4.) Plaintiff and Renaissance Air contend that this transfer was accomplished with the permission, approval, and knowledge of Renaissance Air, but Defendant BDR contends that no lease was in effect on that day and that BDR did not have knowledge that the aircraft was flown to Honduras and did not provide permission or approval for the transfer. (Compl. ¶ 21; BDR's Answer ¶ 21; Renaissance Air's Answer ¶ 16.)

Defendant Renaissance Air states in its Answer that the plane was sent to Honduras because that was where Rollins Air would operate it. (Renaissance Air's Answer ¶ 18.) Renaissance Air also says that it found a place to make the repairs for Defendant BDR at a significantly reduced cost, and that Mr. Davis of BDR was in agreement for the repairs to be made in Honduras because it would save him money. (Id.) However, BDR disputes this assertion, and Defendant BDR alleges that the "legal interests, rights, control and ownership in

4

the Aircraft were not transferred to any party other than Bill Davis Racing, Inc." (BDR's Answer ¶ 26.)

BDR provided a Proof of Loss to Plaintiff on February 3, 2011, stating that the loss resulted from or was caused by "theft." (Compl. ¶ 29.) The Proof of Loss further states that the aircraft was flown from North Carolina to Miami, Florida, for "pre-buy" under a 'ferry permit'" but was flown from Miami to Honduras without the owner's knowledge or permission. Plaintiff denied coverage and brought the present declaratory judgment action on February 24, 2011, seeking a declaration of its rights, duties, and obligations under the Policy.[1]

In Count One of Plaintiff's Complaint, Plaintiff contends that no coverage is owed under the Policy because BDR's claim "fails to allege an accident that was not expected to happen and thus, is not an occurrence resulting in property damage." (Compl. at 8.) In Count Two, Plaintiff claims that there is no coverage because the alleged loss of the aircraft was caused by embezzlement of the aircraft by Renaissance Air. (Id. at 9.) Plaintiff contends in Count Three that by executing the Renaissance lease, Defendant BDR transferred interest and/or ownership in the aircraft contrary to provisions of the insurance Policy. (Id. at 9-10.) In Count Four, Plaintiff alleges that the "wear and tear" exclusion in the Policy precludes coverage. (Id. at 10.) In Count Five, Plaintiff seeks a declaratory judgment that the insurance Renaissance Air was required to obtain under the lease is primary and not subject to any offset by any other insurance

---

[1] Plaintiff brought this case as a Declaratory Judgment action under 28 U.S.C. § 2201, with jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. In this regard, the Court notes that Plaintiff U.S. Aviation has its principal place of business in New York. (Compl. at 2.) Defendant BDR maintains its principal place of business in High Point, North Carolina. (Id.) Defendant Renaissance Air is incorporated under the laws of Delaware and its sole member is Dale Clark, a resident of South Carolina. (Id.) Defendant Bancorp is incorporated in Mississippi and has its principal place of business there. (Id.)

5

carried by BDR. (Id. at 11.) Finally, in Count Six, Plaintiff seeks a declaratory judgment against Defendant Bancorp to the extent that Banccorp is an interested party as a lienholder of the aircraft, based on Plaintiff's contention that it has no obligation under several provisions of the Policy to make payment to Bancorp. (Id. at 12.)

Defendant BDR filed a counterclaim against Plaintiff U.S. Aviation, as manager of the United States Aircraft Insurance Group ("USAIG"). Defendant BDR alleges that USAIG breached its contract with BDR, failed to deal fairly and in good faith with BDR in the settlement of its claim, did not attempt in good faith to settle BDR's claim, and that BDR was damaged by USAIG's unfair and deceptive trade practices. (BDR's Answer at 10-11.)

II. DISCUSSION

    A. Standard

The standard for granting judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as for granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Under Rule 12(b)(6), a claim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding a Rule 12(c) motion, the court assumes the facts alleged by the non-moving party are true and draws all reasonable inferences in the non-moving party's favor. Mendenhall v. Hanesbrands, Inc., __ F. Supp. 2d __, 2012 WL 1230743 (M.D.N.C. Apr. 12, 2012). On a Rule 12(c) motion, the Court considers the Complaint, the Answer, and any Reply. In addition, documents attached to the

6

pleadings are considered for Rule 12(c) purposes if the documents are central to the claims and the authenticity is not challenged.  Id.  The Rule 12(c) motion should be granted only if, when taking all of the non-moving party's factual allegations as true, no genuine issues of material fact remain and the case can be determined as a matter of law.  Id.

In the present Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff contends that the pleadings establish that there was no covered loss of the aircraft under the Policy based on the "embezzlement exclusion" as set out in Count Two. Second, Plaintiff contends that it is also entitled to declaratory judgment in its favor with respect to any potential claim by Defendant Bancorp as the lienholder.  Finally, Plaintiff also contends that Defendant BDR has failed to allege a sufficient basis to support its counterclaims for unfair and deceptive trade practices and bad faith refusal to settle.  The Court will consider each of these separate contentions in turn.

      B.     The Embezzlement Exclusion

In the present Motion for Judgment on the Pleadings, Plaintiff first contends that it is entitled to judgment in its favor because the pleadings establish as a matter of law that the loss asserted by Defendant BDR is an "embezzlement" that is excluded from coverage under the terms of the Policy.  In this regard, the Policy at issue contains an embezzlement exclusion which applies "when someone with a legal right to possess [BDR's] aircraft embezzles it." (Compl., Ex. 3 ¶ III.Q.4.)  In support of its Motion for Judgment on the Pleadings, Plaintiff argues that BDR in its Answer admits that it gave lawful possession of the aircraft to

7

Renaissance Air. (Pl.'s Mem. at 9-10.)[2] Plaintiff further contends that this constitutes "embezzlement" rather than "theft" because under North Carolina law, "the key distinction between embezzlement and larceny is that with embezzlement, '[t]he person accused must have been entrusted with and received into his possession lawfully the personal property of another' prior to converting the property." (Pl.'s Mem. at 9 (quoting State v. Weaver, 359 N.C. 246, 255, 607 S.E.2d 599, 604 (2005)).)

However, Defendant BDR argues that Plaintiff is not entitled to judgment on this issue because material facts are in dispute that cannot be resolved on the face of the pleadings. First, BDR notes that its Answer makes clear that "the legal interests, rights, control and ownership in the Aircraft were not transferred to any party other than [BDR]." (BDR's Answer ¶ 26.) Second, Defendant BDR points out that, as noted above, the parties agree now that the BDR-Renaissance Air lease never went into effect. BDR therefore contends that Renaissance Air did not have any rights to possess the aircraft under the lease. Third, Defendant BDR argues that it consented "to the application for a Ferry Permit for the Aircraft to be flown to Opa Locka for the purpose of conducting the required inspection," but that the aircraft was never flown to Opa Locka Airport and was instead flown to a different airport in Miami and then to Honduras without a ferry permit and without knowledge or permission of BDR. (BDR's Resp. at 3.)

---

[2] The admission to which Plaintiff refers is paragraph 19 of BDR's Answer where it states that BDR admits paragraph 19 of Plaintiff's Complaint and that "it provided limited authorized [sic] to Renaissance Air to move the Aircraft to Opa Locka Airport in Miami, Florida for the purpose of maintenance." (BDR's Answer ¶ 19.) Paragraph 19 of Plaintiff's Complaint alleges that on or about November 16, 2010, BDR signed an Authorization to Move Aircraft form permitting Renaissance to transport the Aircraft to Miami, Florida. (Pl.'s Compl. ¶ 19).

Having considered these contentions, the Court agrees that the pleadings before the Court, taken in the light most favorable to BDR, do not present a sufficiently clear factual picture to allow the Court to impose judgment in Plaintiff's favor. Specifically, the Court notes that there are significant disputes regarding the scope and basis of the authority given to Renaissance Air and the circumstances that led to the aircraft being taken to a different airport in Miami and then to Honduras. These facts are sufficiently disputed such that the Court cannot determine as a matter of law that Renaissance Air had been given sufficient authority so as to render the subsequent taking of the aircraft an "embezzlement" rather than a "theft."

In addition, these factual questions implicate additional legal contentions raised by BDR. For example, Defendant BDR argues that the embezzlement exclusion cannot apply as a matter of law because Renaissance obtained possession of the aircraft by false pretense. (Id. at 4.)[3] As a secondary argument, Defendant BDR argues that embezzlement is limited to fiduciary roles and relationships not present in this case since Renaissance Air is not an agent, fiduciary, or employee of BDR. See N.C. Gen. Stat. § 14-90 (2011); State v. Britt, 87 N.C. App. 152, 153, 360 S.E.2d 291, 292 (1987). In response, Plaintiff contends that BDR created a bailment relationship

---

[3] In this regard, Defendant notes that under the unambiguous terms of the insurance Policy, the embezzlement exclusion applies when "someone with a legal right to possess" the aircraft "embezzles" it. In North Carolina, the crimes of obtaining property by false pretense and embezzlement are mutually exclusive. State v. Speckman, 326 N.C. 576, 577, 391 S.E.2d 165, 166-67 (1990) ("guilt of either embezzlement or false pretenses necessarily excludes guilt of the other"). In order to "embezzle," one must obtain possession of the property lawfully. State v. Johnson, 108 N.C. App. 550, 553-54, 424 S.E.2d 165, 167 (1993), rev'd on other grounds, 335 N.C. 509, 438 S.E.2d 722 (1994). At the hearing, Plaintiff argued that allegations of "false pretenses" or "fraudulent intent" were not alleged in the Answer, and that the Court should hold Plaintiff strictly to the facts as specifically alleged. However, Plaintiff contends that its general allegation of "theft" is sufficient to include concepts of obtaining property by false pretenses or with fraudulent intent. Moreover, even if it were necessary to amend the Complaint to add these additional allegations, the Court would allow such an amendment since there would be no delay or prejudice to Plaintiff, as discovery had not even begun at the time these contentions were raised.

9

when it authorized Renaissance Air to transfer the aircraft to perform maintenance for a pre-purchase inspection. See Flexlon Fabrics, Inc. v. Wicker Pick-up and Delivery Serv., Inc., 39 N.C. App. 443, 447, 250 S.E.2d 723, 726 (1979) (bailment created when defendant-corporation agreed to move plaintiff-corporation's goods); N.C. Gen. Stat. § 14-90(a)(4) (listing a "bailee" as a person to whom the North Carolina embezzlement statute applies). However, BDR contends that an ordinary bailment was not created in this case to the extent that Renaissance Air harbored a fraudulent intent to misappropriate the goods when they were received.

Having considered these contentions, the Court concludes that resolution of these issues will require resolution of the disputed facts noted above, including the scope of any authorization given to Renaissance Air, the purpose for which the aircraft was transferred, the intent of Renaissance Air, and the circumstances surrounding the transfer of the aircraft to Miami and then to Honduras. These are disputes that should be resolved based on evidence presented after discovery, rather than by preliminary parsing of the pleadings where the facts are in dispute. Therefore, the Court concludes that Plaintiff has failed to show that it is entitled to judgment as a matter of law in its favor, and will recommend that Plaintiff's Motion for Judgment on the Pleadings be denied in that regard. However, the Court notes that this denial would be without prejudice to Plaintiff raising these issues on a Motion for Summary Judgment after the close of the discovery period that has been set by the Court in this case.

C.     Defendant Bancorp

In addition, in its Motion for Summary Judgment, Plaintiff also seeks declaratory judgment in its favor as to its liability under the Policy with respect to Defendant Bancorp. As to this contention, the parties agree that Defendant Bancorp is a lienholder for the aircraft and that the insurance Policy issued by Plaintiff contains coverage for Bancorp in Endorsement 12. However, Plaintiff argues that Bancorp has no right to payment under the Policy because there is no coverage for Defendant BDR's proof of loss. (Pl.'s Mem. at 10-11.) In response to Plaintiff's Motion, Bancorp argues that Endorsement 12 provides separate and distinct coverage that is not dependent upon Defendant BDR's coverage. (Bancorp's Response at 5-11.)[4] Defendant Bancorp further contends that even if coverage were dependent upon BDR's coverage, the Policy provides coverage here because BDR has asserted a covered loss.

As discussed above, the Court has determined that there are disputed factual issues that affect the determination of whether BDR has asserted a covered loss, and therefore judgment on the pleadings is premature. Although Bancorp raises multiple contentions regarding its potential coverage under the Policy separate and distinct from BDR, at the hearing the parties all agreed that there was no need to reach any of these additional issues raised by Bancorp if the

---

[4] In this regard, Bancorp contends that Endorsement 12 is an example of a "standard mortgage clause" by which it is freed from Policy defenses which Plaintiff may have used against Defendant BDR. Defendant Bancorp also argues that: (1) Defendant BDR is in default as required by Endorsement 12, and Bancorp provided sufficient notice; (2) Endorsement 12 requires only that Bancorp's interest in the aircraft be impaired, not BDR's interest, and Bancorp's interest is impaired by the aircraft being located in Honduras and partially disassembled; (3) the requirement for providing proof of loss in Endorsement 12 is satisfied by the proof of loss submitted by Defendant BDR, and if not, by Bancorp's Answer; and (4) the exception for coverage listed in Endorsement 12, for loss of the aircraft due to conversion, embezzlement, or secretion by Defendant BDR, does not apply because Plaintiff contends that Renaissance Air rather than Defendant BDR embezzled the aircraft. (Bancorp's Resp. at 11-17.) Finally, Bancorp argues that even if its coverage depends upon an "occurrence" to Defendant BDR, that requirement is satisfied by Renaissance taking the aircraft out of the country. (Id. at 17-20.)

11

Court found that there were disputed factual issues precluding judgment as to BDR. Given the Court's discussion above rejecting on the present record Plaintiff's argument that Defendant BDR did not suffer a covered loss as a matter of law, there is no basis for granting judgment for Plaintiff against Bancorp. Therefore, the Court will recommend that Plaintiff's Motion for Judgment on the Pleadings also be denied as to Defendant Bancorp.

D. BDR's Counterclaims

Finally, Plaintiff raises a separate contention in the Motion for Judgment on the Pleadings, asserting that judgment in its favor should be granted on Defendant BDR's extra-contractual counterclaims because Defendant BDR fails to allege sufficient facts to state a claim for an unfair and deceptive trade practice under North Carolina law or for bad faith refusal to settle a claim. (Pl.'s Mem. at 12-15.) To state a claim for unfair and deceptive trade practice under North Carolina General Statute § 75-1.1, a plaintiff must allege: (1) that the defendant committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that the plaintiff was injured thereby. TSC Research, LLC v. Bayer Chem. Corp., 552 F. Supp. 2d 534, 546 (M.D.N.C. 2008). Moreover, a "simple breach of contract, even if intentional, does not amount to a violation of the Act; a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989).

Defendant BDR does not state any specific facts to support its claim of an unfair and deceptive trade practice. The relevant portion of its counterclaim alleges that "Bill Davis Racing, Inc. was damaged by USAIG's unfair and deceptive trade practices." Defendant has failed to

allege any facts which might support a finding of aggravating circumstances attending the alleged breach of contract. In its Response Brief, Defendant offered no support or contentions regarding these claims, and during the hearing in this matter, counsel for Defendant BDR acknowledged as much when he stated that "it would be hard to say" that Defendant BDR's counterclaim met the requirements of Twombly, 550 U.S. 544. (Tr. at 47.)

Defendant BDR's allegation of Plaintiff's bad faith refusal to settle suffers from the same defect. To state a claim for bad faith refusal to settle Defendant BDR must allege facts showing: "(1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct." Lovell v. Nationwide Mutual Ins. Co., 108 N.C. App. 416, 420, 424 S.E.2d 181, 184 (1993). In its counterclaim, Defendant BDR merely states that "USAIG failed to deal fairly and in good faith with [BDR] in the settlement of" BDR's claim and that USAIG "did not attempt in good faith to effectuate prompt, fair and equitable settlement" of BDR's claim. (BDR's Answer at 11.) Defendant BDR has not alleged facts from which the Court may infer aggravating or outrageous conduct by Plaintiff, nor has BDR attempted to specify or identify an alleged unlawful insurance practice. Cf. Mason v. Universal Underwriters Life Ins. Co., No. 1:06CV190, 2006 WL 2847288 (W.D.N.C. Oct. 4, 2006) (noting that "plaintiff has a duty to allege with sufficient clarity as to notify defendant what it purportedly did wrong"). Defendant BDR did not provide any further support for these contentions in its Response or at the hearing. (Tr. at 47.) Accordingly, the Court recommends that judgment be granted to Plaintiff on Defendant BDR's claims for bad faith refusal to settle the insurance claim and unfair and deceptive trade practices.

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [Doc. #19] be GRANTED IN PART to the extent that Plaintiff seeks dismissal of Defendant BDR's counterclaims for bad faith refusal to settle and unfair and deceptive trade practices, and that those counterclaims be DISMISSED.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [Doc. #19] be DENIED in all other respects, without prejudice to Plaintiff raising its contentions as part of a Motion for Summary Judgment after the close of the discovery period that has been set by the Court.

This, the 24th day of August, 2012.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge